### DOBBINS *v.* BROWN *et al.*

(*Supreme Court, General Term, Second Department.* May 14, 1888.)

MASTER AND SERVANT—DEFECTIVE APPLIANCES—QUESTION FOR JURY.

Plaintiff's husband, a miner in defendant's employ, while descending a shaft of the Croton aqueduct, was thrown out of the bucket, and killed. In the shaft, and above the bucket, and designed to follow in the descent a few feet above it, to steady it, was a device known as a "follower," made of strong, sound timber, through the center of which the bucket rope passed. After the accident, the follower and the bucket were found close together, at the bottom of the shaft, broken. The only survivor of the accident testified that, when they were about half way down, something struck him violently on the head, knocking him senseless. This was all that was shown directly as to the cause of the accident. *Held,* that the court properly left it to the jury to say whether plaintiff's theory as to the cause was correct, viz., that the follower, owing to its defective mechanism, became temporarily lodged in the shaft, and, upon being released, descended, and struck the bucket, precipitating it to the bottom; also whether it was negligence in defendants to use such an appliance.

Appeal from circuit court, Westchester county; WILLARD BARTLETT, Justice.

This was an action by Anna M. Dobbins, as administratrix of Lorenzo Dobbins, deceased, against the firm of Brown, Howard & Co., to recover damages

for the negligent killing of her husband.  The court (BARTLETT, J.) charged the jury as follows: "The plaintiff's husband was a miner employed at shaft No. 3 on the new Croton aqueduct in this county, and he lost his life while descending that shaft on the morning of December 7, 1885.  His widow brings this suit against the contractors, Brown, Howard & Co., to recover $5,000 for their alleged negligence in so conducting the work at that point on the aqueduct as to cause her husband's death.  It appears that, on the morning of that day, he, in company with four other men, got into the bucket at the head of the shaft to make the descent.  The arrangement of the appliances there has been fully described in your hearing, and I think you must understand it. Just above the bucket was a frame-work made of timber, which has been called here the follower.  Through that the cable to which the bucket was suspended ran loosely, not being fastened to the follower in any way.  The design of this appliance, as stated by the witnesses, was to prevent the rope or cable from revolving as the bucket went up or down, and steady it so as to keep the bucket near the middle of the shaft; and it seems to have been well devised for that purpose.  The bucket, as I have said, was intended to descend the shaft at a distance of about twenty feet—I think that is the evidence—from this follower.  On the morning in question this party of miners got into the bucket, and commenced the descent of the shaft; and when they had gone down about 175 feet, according to the testimony of the only survivor, that survivor felt himself struck by some object from above, and he became senseless.  And I think the substance of the testimony is that he subsequently found himself, with the bodies of his companions, at the bottom of the shaft.  At all events, the testimony of the foreman, who went to the bottom of the shaft shortly after the accident, is to the effect that he there discovered the bucket, the bodies of the injured miners, and the follower; the timber of the follower being broken into three pieces, I think, he said.  The contention of the plaintiff here is that the accident occurred in this way:  As the follower was descending, counsel say that it must have met with some obstacle, which checked its descent, and stopped it somewhere in the shaft; that the bucket kept on, and thereafter the follower became dislodged from the place where it had stopped, and fell upon the bucket from a considerable height, killing and wounding its occupants; that these defendants, the contractors, who maintained this structure, and carried on this work, were negligent in constructing the follower in such a manner that it could stop, and cause an accident of this kind.  And their contention is that these contractors, as prudent and careful men in the conduct of this business of mining, should have taken some precaution to avert the possibility or probability of such an accident.  The rule of law as to the obligation of the master in such a case is very simple.  It is his duty to furnish the servant in his employ with such means and appliances to carry on his work as shall be suitable and safe; and to that end he is bound to exercise the reasonable care of a prudent man carrying on the same business.  So long as he does this, he may adopt such means and appliances as he sees fit; but this he is bound to do.  The servant, on the other hand, assumes the risks of his employment; that is to say, such risks as are known to him,—visible, plain,—those with which he must necessarily have become acquainted, or those of which, under all the circumstances of the case taken together, he ought to have known.  And I think that in this case, upon all the evidence, this plaintiff's husband did assume the risk of going up and down this shaft in the bucket and with the follower.  I do not mean, by that, that, if the follower was in any respect defective, he assumed any risk in regard to that, unless that risk were known to him, or ought to have been known to him under all the circumstances. In the first place, gentlemen, it will be your duty to inquire whether the defendants were negligent, within the rule which I have laid down.  As I have said, the theory of the accident presented by the counsel for the plaintiff is

that it was due to the stoppage of this follower somewhere in the shaft as the bucket was going down. The defendants' counsel tells you that the defendants have never been able to explain the accident; that he insists, in substance, that, if you find the accident occurred in any way suggested in behalf of the plaintiff, it will be mere guesswork. Of course, if the evidence leaves you entirely in the dark as to how this occurred; if there is no theory, properly deducible from the facts, which enables you to say that these defendants were negligent, or which enables you to say how the accident occurred, in other words,—then you cannot find a verdict in favor of the plaintiff. But I will call your attention, in addition to the evidence which I have already mentioned, to one or two other items of proof as bearing upon this question of how the accident occurred. It is proved and uncontradicted that the material of which the follower was made, was good, sound timber. It is for you to say whether, from that fact, it is not a fair inference that the accident could hardly have occurred from any rottenness or any breaking of the follower on its way down. It is also testified and undisputed that the rope was a stout steel cable; and the witness in behalf of the defendant who testified in respect to that matter stated, in substance, without objection by the plaintiff's counsel, that he did not attribute the accident to any defect in the rope. So that, if that testimony be true,—and, as I say, it is undisputed,—it can hardly have occurred by reason of any breakage of the rope, or any defect therein. Then you have the facts, which I have already mentioned, as to the presence of the bucket, and the follower lying in close proximity to it, broken, at the foot of the shaft. Can you, from these facts, infer that the accident occurred in the manner suggested by the plaintiff's counsel or not? That question I leave to you. I have not intended to express, and I do not intend to intimate, any opinion as to the answer which you should give to it. In the second place, gentlemen of the jury, before there can be a recovery in a case of this kind, it is essential for the plaintiff to show that the person killed was not guilty of any fault bringing the injury upon himself. I think the only testimony as to the conduct of the deceased miner is that he got into the bucket, and was going down in it with his companions. Now, is there any evidence there of any negligence upon his part? And, if not, is there evidence that he conducted himself in a proper and prudent manner? That question, also, I leave to you." The jury brought in a verdict for plaintiff for $5,000, and judgment was entered accordingly. Defendants appeal.

*E. T. Lovatt*, for appellants. *Livingston & Olcott*, for respondent.

PRATT, J. Two cases involving the same issues of fact and law have already been determined by this court, to-wit, *Boardman* v. *Brown*, 44 Hun, 336, and *Burke* v. *Same*, 47 Hun. 635, (decided at the last general term.) It follows, if the decisions in those cases are right, this case ought to be affirmed. The appellant has failed to point out any material distinction between those cases and the present case. The issues are precisely the same. The present case was submitted to the jury under a charge clear and specific, and as favorable to the defendants as the facts warranted, and the jury found a verdict which cannot be said to be excessive. We think it was a case proper to be submitted to a jury, under principles too familiar to require comment, and that the verdict ought not to be disturbed. This general term having already filed two written opinions upon the subject-matter of this controversy, renders it unnecessary to indulge in any further discussion. Judgment affirmed, with costs.